IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JAMES THOR KIRK,

      Plaintiff,

v.                                              CV 12-1157 JAP/WPL

DOCTOR ROLANDO FLORES and
OFFICER JEFFREY BURKE,

      Defendants.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

This matter is before the Court on James Thor Kirk's Motion for Leave to File Amended Complaint. (Doc. 200.) Kirk seeks leave to amend his complaint "to more fully allege" the claims he previously brought while *pro se*. (*Id.* at 1.) Kirk also requests leave to bring a new cause of action against John Does 1-3 for violating his Fourth Amendment rights. (*Id.*) Officer Burke and nurse practitioner Flores oppose this motion. (Docs. 203-04.) Kirk filed a reply. (Doc. 208.) Upon review of the briefing, the record, and the relevant law, I recommend that the Court grant in part and deny in part Kirk's motion, allowing leave to amend the complaint as to certain claims, but not others, against Officer Burke and denying leave to amend as to his claims against Flores and John Does 1-3. I further recommend that the Court grant summary judgment in favor of Flores on the basis of qualified immunity and dismiss Kirk's claims against him with prejudice.

**FACTUAL AND PROCEDURAL BACKGROUND**

This case arises from events subsequent to a high-speed police chase on October 26, 2010, resulting in Kirk crashing his vehicle at approximately ninety-five miles per hour outside

of Los Lunas, New Mexico. The Los Lunas Police Department ("LLPD"), the New Mexico State Police ("NMSP"), and the Lincoln County Sheriff's Office ("LCSO") were involved in the chase, which, according to an incident narrative by LLPD Officer Christopher Blea, was initiated when Blea recognized Kirk as a driver who had fled the police the previous month. (Doc. 113 Ex. 2 at 3.) The details of the chase itself, which were captured by Burke's dashcam (*see* Doc. 112 Ex. B), are not relevant to the claims brought by Kirk. Nonetheless, I do note that the chase began in Los Lunas at approximately 12:25 p.m. and ended in Kirk's vehicle rolling multiple times at 1:00 p.m. Burke's dashcam video reflects that Kirk swerved toward LCSO Officer David Thomas, who was standing outside of his vehicle along Highway 6, and that Kirk drove in the lane of opposing traffic for much of the chase, endangering other motorists. Kirk and his passenger, Stacy Gurule, can also be seen throwing small packages out of the vehicle windows.

Burke assumed the primary position in the police chase for the majority of the chase and was the first officer to reach Kirk and Gurule, followed shortly thereafter by NMSP Officer Paul Lopez. Gurule can be heard on video screaming and stating that she is pregnant as Burke helped her from the vehicle. Kirk was ejected from the vehicle and is not visible on Burke's dashcam video. The video reflects officers interacting with a person on the ground on the side of the vehicle out of view of the dashcam. According to Burke's affidavit (*see* Doc. 114), he and Lopez used "distraction techniques"[1] to handcuff a resisting, combative Kirk, who had become conscious after a brief period of unresponsiveness. Packages of marijuana and heroin were also found at the scene.

---

[1] An affidavit from Burke states that "[Lopez and I] positioned ourselves kneeling, one near Mr. Kirk's head and one at his torso, (I cannot remember which position I was in) and we physically moved his arms back and forth in random, fast, jerky motions to confuse the muscles and create a situation where constant force cannot be used by Mr. Kirk to resist against a constant force applied. My voice can be heard on the audio making grunting type noises as this technique is being employed, as a further element of this unarmed distraction technique." (*Id.*)

Kirk was treated at the University of New Mexico Hospital ("UNMH") for the injuries he sustained in the crash. Doctors performed several CT scans and x-rays. Kirk was assessed with a second metacarpal shaft fracture of his right hand and ACL and MCL injuries to his left knee. (Doc. 138 Ex. D-4 at 1.) His right hand was placed in a splint, and he was referred to see Dr. Mercer at the UNMH General Orthopedic Hand Clinic on November 1, 2010, and the Sports Medicine Clinic on November 26, 2010. (*Id.*) Kirk was also found to have small pulmonary contusions and facial and scalp lacerations. (Doc. 138 Ex. D-5 at 1.) He was placed on oxycodone for pain. (*Id.*)

Meanwhile, Kirk was charged with attempted murder in the first degree; aggravated assault; aggravated fleeing from an officer; distribution of a controlled substance; possession of a controlled substance; aggravated DWI; reckless driving; resisting, evading or obstructing an officer; and possession of an open container. (Doc. 110 at 9-10; Doc. 111 Ex. A at 6-7.) After treatment at UNMH, Kirk was transported to the Valencia County Detention Center ("VCDC") on October 27, 2010.

Kirk filed a complaint on November 8, 2012 (Doc. 1), and three amended complaints, *pro se*, before the Court provided that no further amendments to the complaint would be considered except by prior order of the Court. Document 53, filed June 17, 2013, constitutes the active complaint in the case. Throughout the pendency of the various complaints, the Court dismissed all Defendants except for Burke and Flores. Kirk alleged violations of his Eighth and Fourteenth Amendment rights. First, Kirk contended that following a car accident, Burke violated his Eighth and Fourteenth Amendment rights by detaining him for several hours in the back of a police car with no first aid before driving him to UNMH in white shorts and handcuffs. He also claimed that Flores delayed and denied adequate treatment at the VCDC, leaving him comatose for weeks

3

in unsanitary conditions with open wounds and broken bones. Specifically, Kirk stated that he suffered "multiple lacerations, contusions and fractures." He stated that the VCDC failed to provide him with adequate treatment and did not send him to a UNMH General Orthopedic Hand Clinic appointment, leading to "significant remodeling of the corpal meta corpols [sic] and phalanges of the right hand causing pain, loss of motor function, dexterity and flexability [sic], and . . . damage to the motor function and speech pathways of the memory center of the brain."

On April 28, 2014, I entered a Proposed Findings and Recommended Disposition ("PFRD"), recommending that the Court find that Burke and Flores are entitled to qualified immunity, grant Defendants' motions for summary judgment contained within their *Martinez* Reports, and dismiss the claims against them with prejudice. (Doc. 162.) On September 3, 2014, following the decision in *Tolan v. Cotton*, 134 S. Ct. 1861 (2014), I *sua sponte* withdrew the PFRD because I found that "the instant case would benefit from further examination of the facts and of whether a blatant contradiction exception should be applied pursuant to *Scott* [*v. Harris*, 550 U.S. 372, 380 (2007)]$^2$ as to the facts surrounding the timing and manner of Kirk's transport to UNMH following the crash." (Doc. 162 at 2.)

On October 14, 2014, I entered an Order Appointing Counsel for Kirk. (Doc. 188.) I provided counsel with time to familiarize themselves with the case and to file the present motion for leave to amend. (*See* Doc. 196.)

---

$^2$ In *Scott*, the Court adopted the facts as depicted by a videotape of a high-speed police chase, rather than the facts as described by the plaintiff, because the plaintiff's "version of events [was] so utterly discredited by the record that no reasonable jury could have believed him." *Scott*, 550 U.S. at 380.

**STANDARDS OF REVIEW**

**I.     Leave to Amend**

A plaintiff may amend his or her complaint prior to trial with leave of the court. *See* FED. R. CIV. P. 15(a)(2). Leave of the court should be given freely unless the amendment would cause undue delay, would prejudice the opposing party, or the amendment is futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). "A court properly may deny a motion for leave to amend as futile when the proposed amended complaint would be subject to dismissal for any reason, including that the amendment would not survive a motion for summary judgment." *Bauchman for Bauchman v. W. High Sch.*, 132 F.3d 542, 562 (10th Cir. 1997).

**II.     Summary Judgment**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the initial burden of showing that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met this burden, the nonmoving party must identify specific facts that show the existence of a genuine issue of material fact requiring trial on the merits. *Bacchus Indus. v. Arvin Indus.*, 939 F.2d 887, 891 (10th Cir. 1991). A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" if a rational jury could find in favor of the nonmoving party on the evidence presented. *Id.* A mere "scintilla" of evidence is insufficient to successfully oppose a motion for summary judgment. *Id.* at 252. The record and all reasonable inferences therefrom must be viewed in the light most favorable to the nonmovant. *See Muñoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000).

## DISCUSSION

Kirk requests leave to amend pursuant to Federal Rule of Civil Procedure 15(a)(2). Kirk cites to *Minter v. Prime Equip. Co.* for the proposition that "[t]he purpose of . . . Rule [15(a)] is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." 451 F.3d 1196, 1204 (10th Cir. 2006) (quotation omitted). Kirk asserts that, since appointment of counsel, he did not delay bringing the motion for leave to amend. He also contends that Burke and Flores will not suffer prejudice by the entry of the proposed amended complaint.

Kirk's proposed "Verified Amended Complaint for Damages" presents claims pursuant to 42 U.S.C. § 1983. (*See* Doc. 200-1.) With respect to Burke, Kirk seeks to bring a Fourteenth Amendment due process claim for failure to provide adequate medical care, where Burke allegedly exhibited deliberate indifference to Kirk's immediate medical needs by failing to administer first aid following the rollover, handcuffing him, and placing him in the back of his patrol unit for forty-five minutes before transporting him in the unit to UNMH. Kirk requests leave to add a Fourth Amendment unreasonable search claim against John Does 1-3 for a warrantless search of Kirk's anal cavity at UNMH on October 26, 2010. Finally, with regard to Flores, Kirk re-alleges his prior claims that Flores, with deliberate indifference, refused to fully and adequately treat him for his injuries, including a head injury, open wounds, and a broken right hand, or to make arrangements for Kirk to attend an appointment with the UNMH General Orthopedic Hand Clinic on November 1, 2010. As with Burke, Kirk asserts that Flores violated his due process right to adequate medical care. Kirk alleges that he continues to suffer from migraine headaches, still has glass shards in his face and nasal passage, and experiences significant pain and limited range of movement in his right hand.

**I.     Officer Burke**

Burke recounts his version of the events between the time of the rollover and Kirk's arrival at UNMH. (Doc. 204 at 7-8.) Burke asserts that the rollover occurred at about 1:00 p.m.; Living Cross Ambulance Service, Inc. was dispatched to the scene at about 1:02 p.m.; another officer placed handcuffs on Kirk, who was not moved by officers from the site where he landed upon ejection from the vehicle; paramedics arrived at 1:24 p.m.; paramedics began treatment of Kirk at 1:28 p.m.; the ambulance, with Kirk inside, departed from the scene at 1:45 p.m. and transported Kirk to UNMH; and the ambulance arrived at UNMH at 2:03 p.m.

Burke's counsel states that she contacted Kirk's counsel and requested that they provide the basis and any evidentiary support for the allegations against Burke. However, Burke's counsel did not receive a response. Burke cites a First Circuit case for the proposition that

> [i]f . . . leave to amend is not sought until after discovery has closed and a summary judgment motion has been docketed, the proposed amendment must be not only theoretically viable but also solidly grounded in the record. In that type of situation, an amendment is properly classified as futile unless the allegations of the proposed amended complaint are supported by substantial evidence.

*Hatch v. Dep't for Children, Youth & Their Families*, 274 F.3d 12, 19 (1st Cir. 2001) (citations omitted). Burke notes that he provided documentary evidence, discovery responses, and a *Martinez* Report while Kirk was *pro se*. (*See* Docs. 110-14.) Burke contends that Kirk's proposed allegations are not theoretically viable, solidly grounded in the record, or supported by substantial evidence. Therefore, Burke argues, Kirk's proposed claims against him are futile. Further, Burke asserts that he has already spent considerable time and expense defending against Kirk's claims, and allowing the amended complaint without competent evidentiary support would be prejudicial.

Kirk contends, as to both Burke and Flores, that his factual allegations, which he proposes to sign under penalty of perjury, must be treated as an affidavit and must be accepted as true at this stage of the litigation. In particular, Kirk notes that until this point, he was not represented by counsel, and counsel has not had the full opportunity to conduct discovery. Kirk argues that Defendants have not established that his proposed verified amended complaint would be dismissed upon dispositive motion, so amendment is not futile.

As a preliminary matter, I note that First Circuit decisions are not binding in the Tenth Circuit. In the Tenth Circuit,

> [B]ecause at summary judgment we are beyond the pleading phase of the litigation, a plaintiff's version of the facts must find support in the record: more specifically, "[a]s with any motion for summary judgment, '[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts[.]'"

*Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009) (quoting *York v. City of Las Cruces*, 523 F.3d 1205, 1210 (10th Cir. 2009) (quoting *Scott*, 550 U.S. at 380)).

Now that Kirk has filed a motion for leave to amend, I observe that the facts are not disputed to the extent they were in Kirk's latest *pro se* complaint. Instead of alleging that he was placed in the back of Burke's police unit for several hours without medical care, Kirk has now shortened this period to forty-five minutes. (Doc. 200 Ex. 1 at 3.) This time period coincides with the events as laid out by Burke and the record: The high-speed pursuit ended at 1:00 p.m. with the rollover of Kirk's vehicle, and Kirk was transported from the scene toward UNMH at 1:45 p.m. (Doc. 113 Ex. E at 3; Doc. 204 at 7.) What remains disputed is 1) whether Burke left Kirk where he landed after the ejection or placed him into the back of his police unit and 2) whether Kirk was transported to UNMH by ambulance or by Burke in his police unit.

In *Rhoads v. Miller*, the Tenth Circuit examined a § 1983 excessive force case in which the district court denied a defendant's motion for summary judgment on the basis of qualified immunity. 352 F. App'x 289 (10th Cir. 2009) (unpublished). The court affirmed, finding that because the only evidence to controvert the allegations of the plaintiff was other witnesses' testimony, a credibility determination remained for the jury. *Id.* at 291. The court noted that, unlike in *Scott*, in which a videotape blatantly contradicted the plaintiff's version of the events, there was "no videotape or similar evidence." *Id.* In *Robles v. Schultz*, a court likewise found that officers' police reports and dispatch records alone did not establish blatant contradiction of the plaintiff's contentions. No. CIV 08-0438 JB/KBM, 2010 WL 1441287, at *11 (D.N.M. March 15, 2010) (unpublished).

I first address the question about whether Kirk was transported to UNMH by ambulance or by Burke in his police unit. Three distinct sources indicate that Kirk was treated by medical personnel at the scene and transported to UNMH by ambulance: police reports, ambulance records and a paramedic affidavit, and hospital records. Officer Lopez's incident report states that "I stayed with Mr. Kirk until medical personnel arrived on scene and began treating him." (Doc. 110 Ex. A at 9.) Police dispatch records from October 26, 2010, indicate an officer stating at 1:48 p.m.: "I will be following the male subject to UNMH." (*Id.* at 21.)

Paramedic Kevin Druce provided an affidavit stating the following regarding the accident involving Kirk:

> As the documents show, we were dispatched to the scene at 1:02 p.m. and arrived at 1:24 p.m. . . . At no time did I see Mr. Kirk in the back of a patrol car or hear anyone say that Mr. Kirk had been [in] the back of a patrol car following the accident. We rendered emergency first aid to Mr. Kirk as shown in the attached report, including stabilizing his neck, and we transported him via ambulance to UNM Hospital, leaving the scene at 1:45 p.m. and arriving at the hospital at 2:03 p.m.

9

(Doc. 113 Ex. E at 1-2.) The attached claim detail report from Living Cross reflects the times indicated in Druce's affidavit. (*Id.* at 3.) Living Cross's detail report further states that Kirk was placed on a spine board and transported in a gurney. (*Id.* at 5.) The EMS Service Report states that Kirk "[d]oes not remember accident." (*Id.* at 7.) Finally, Living Cross's ambulance bill indicates that the "Origin Address" was "Pickup From Scene." (*Id.* at 10.)

At UNMH, nursing notes indicate that Kirk was removed from the backboard at 2:39 p.m. on October 26, 2010. (Doc. 138 Ex. D-3 at 3.) Jeffrey Jobe, M.D., who examined Kirk's right hand at 6:37 p.m., noted that "[t]he patient denies that he knows how he ended up here but the officer reports there was an automobile roll-over in Las [sic] Lunas." (*Id.* at 3.)

How Kirk was transported from the scene of the rollover to UNMH is not a matter of conflicting witness accounts, as in *Rhoads*, or even a matter of Kirk's testimony versus that of conflicting witness accounts and dispatch records, as in *Robles*. Instead, the present case involves outside records from the ambulance service and from UNMH that indicate that Kirk was placed on a spine board by paramedics and transported to UNMH by ambulance. I recommend that the Court find that these records constitute "similar evidence" to that of a videotape, serving to blatantly contradict Kirk's version of how he was transported to UNMH. *See Rhoads*, 352 F. App'x at 291. As such, I recommend that the Court adopt the facts propounded by Burke and the record that support Kirk's transport to UNMH by ambulance, not police unit. Therefore, I recommend that the Court deny leave to amend to include any allegations that Burke transported Kirk to UNMH in his police unit.

However, I cannot recommend complete denial of Kirk's motion for leave to amend. From the time of the rollover at 1:00 p.m. to the time the ambulance arrived at 1:24 p.m., there are conflicting accounts from Kirk and from the witnessing officers about whether Kirk

10

remained where he landed upon ejection or whether Burke placed him in the back of his police unit. Although Druce stated in his affidavit that upon arrival at the scene, he did not see Kirk in the police unit or hear anyone say that he had been in the police unit, there are no records filed in this case that blatantly contradict the proposition that Kirk was placed in the back of Burke's police unit for some time following the rollover. Where Kirk was physically placed and how he was otherwise treated by Burke prior to the arrival of the ambulance remain genuinely disputed material facts in this case. Therefore, I recommend that the Court permit leave to amend the complaint to assert claims against Burke dealing with Kirk's placement and treatment from 1:00 p.m. to 1:24 p.m. on October 26, 2010.

## II.     Flores

Flores argues that the order withdrawing the PFRD (Doc. 176) is silent as to whether qualified immunity would still be recommended for him. Further, Flores contends that the claims brought against Flores in the proposed amended complaint are identical to claims previously brought by Kirk. Flores argues that the Court should not grant leave to amend because the amendment will not result in a meritorious claim. Specifically, Flores asserts that Kirk's claim will likely be dismissed on summary judgment. Finally, Flores argues that answering another complaint would cause an undue delay in resolving the case and would be prejudicial because it would result in additional attorneys fees.

I withdrew the original PFRD in its entirety, and there are no pending motions for summary judgment. With the assistance of counsel, Kirk has merely re-written prior claims brought while *pro se*. Kirk has alleged no new facts or theories of relief. "[A] sua sponte order of summary judgment may be appropriate if 'the losing party was on notice that she had to come

forward with all of her evidence.'" *Ward v. Utah*, 398 F.3d 1239, 1245 (10th Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 326).

Flores conceded that this Court will likely find him, a private certified nurse practitioner who subcontracted to perform medical services at the VCDC until October 2012, to be a state actor subject to suit under 42 U.S.C. § 1983. (Doc. 121 at 4.) Flores previously argued that he is entitled to qualified immunity because Kirk failed to establish deliberate indifference to a serious medical need. (*Id.* at 10.)

Qualified immunity is broad and protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The Supreme Court has "'repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation.'" *Pearson v. Callahan*, 55 U.S. 223, 232 (2009) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)). When a defendant moves for summary judgment on the basis of qualified immunity, it is the plaintiff's burden to show that: "(1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). Furthermore, "[i]f, and only if, the plaintiff meets this two-part test does a defendant then bear the traditional burden of the movant for summary judgment—showing that there are no genuine issues of material fact and that he . . . is entitled to judgment as a matter of law." *Clark v. Edmunds*, 513 F.3d 1219, 1222 (10th Cir. 2008) (internal quotations omitted). A majority of courts have held that a court can address qualified immunity *sua sponte*. *Alexander v. Tangipahoa Parish Sheriff Dep't*, Civil Action No. 05-2423, 2006 WL 4017825, at *5-6 (E.D. La. Oct. 2, 2006) (unpublished) (citing *Peterson v. Utah,* 30 F. App'x 937, 2002 WL 373978, at *1 (10th Cir. 2002) (unpublished)) (other citations omitted); *see also Lillo ex. rel. Estate of Lillo v. Bruhn*, 413 F. App'x 161, 162 (11th Cir. 2011) (unpublished)

(finding no error in the district court determining *sua sponte* that defendants were entitled to qualified immunity).

The parties do not dispute the actual medical care that Flores provided, only the adequacy of the care and whether Flores exhibited deliberate indifference. (*See* Doc. 200 Ex. 1 at 6.) In response to the order for a *Martinez* Report, Flores provided all relevant medical records and requests for medical care from Kirk. (*See* Doc. 138.) Kirk had an adequate opportunity to supply documentation to oppose the issues raised in Flores's *Martinez* Report. Kirk provided supplemental documentation to support his case in Documents 141-45, 150, and 152. There is no indication in the record or in Kirk's motion for leave to amend that records of any medical encounter with Flores have not been filed with this Court. As contended by Flores, the proposed amended complaint "adds nothing new to the qualified immunity analysis." (Doc. 203 at 3.) I therefore proceed to address whether Kirk's allegations, as laid out in the proposed amended complaint, survive qualified immunity.

"[P]retrial detainees have essentially the same rights under the due process clause of the Fourteenth Amendment as convicted prisoners have under the Eighth Amendment." *Bauer v. Dantis*, 77 F.3d 492, 1996 WL 77037, at *1 n.1 (10th Cir. 1996) (unpublished table decision). "The Eighth Amendment's proscription of cruel and unusual punishments is violated by 'deliberate indifference to serious medical needs of prisoners.'" *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 243-44 (1983) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Because Kirk was a pretrial detainee while under the care of Flores, Kirk properly proposes to bring a Fourteenth Amendment due process claim for inadequate medical care at the detention center. (*See* Doc. 200 Ex. 1 at 6.)

A government official violates clearly established Fourteenth Amendment due process rights "if he acts with deliberate indifference to an inmate's serious medical needs—if he 'knows of and disregards an excessive risk to inmate health or safety.'" *Garrett v. Stratman*, 254 F.3d 946, 949 (10th Cir. 2001) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). A plaintiff must satisfy both objective and subjective components. *Id.* "'The objective component is met if the deprivation is sufficiently serious.'" *Id.* (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)). "'[A] medical need is considered sufficiently serious if the condition has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Id.* (quoting *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001)) (internal quotations omitted). Furthermore, if the deprivation alleged is a delay in medical treatment, the delay must result in substantial harm: "lifelong handicap, permanent loss, or considerable pain." *Id.* at 950 (citing *Oxendine*, 241 F.3d at 1278). The Tenth Circuit has held that the pain and suffering an inmate experienced for several hours while feeling that he was having a heart attack (and turned out to actually be having a heart attack) before officials provided him with medical care constituted substantial harm satisfying the objective component of an Eighth Amendment violation. *Sealock*, 218 F.3d at 1210.

The subjective element, requiring "deliberate indifference," is shown where the official was "'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Garrett*, 254 F.3d at 949 (quoting *Farmer*, 511 U.S. at 837). The factfinder in the case determines whether the official had knowledge of the substantial risk and may make this determination based on circumstantial evidence, the obviousness of risk, and other factors. *See id.* at 950.

Flores first saw Kirk for an intake visit on October 27, 2010, at which Flores prescribed ibuprofen and flexeril for pain management after noting multiple bruises and lacerations and Kirk's hand splint and knee brace. (*See* Doc. 138 Ex. D-6 at 8-9.) Flores also wrote that Kirk was sore from his motor vehicle accident and "just wants to be left alone and allow[ed] to rest." (*Id.* at 8.) Flores placed Kirk on suicide watch because Kirk voiced suicidal ideation to staff. (*Id.*)

Flores did not see Kirk again until January 22, 2011. (*See* Doc. 138 Ex. D-9 at 4.) During the interim, Kirk was seen by other healthcare providers on November 8, November 15, December 8, and December 22. (*See* Doc. 138 Ex. D-7, D-8.) Kirk was on suicide watch until November 15, 2010, at which time he was cleared for housing with the general population. (Doc. 138 Ex. D-7 at 5.) On December 8, 2010, another healthcare provider noted that Kirk's right hand metacarpal dislocation was not interfering with function. (*Id.* at 15.)

Even if Kirk experiences significant pain and limited range of motion in his right hand, neither medical reports nor Kirk's medical treatment requests reflect a substantial risk of serious harm. After his hand was placed in a splint at UNMH, radiologist Jennifer Ann Johnson, M.D., described "[a] mildly comminuted fracture of the mid second metacarpal diaphysis . . . visualized with mild ventral angulation of the distal fracture fragment. . . . [T]he second metacarpal fracture shows improved alignment. No other acute abnormality is present." (Doc. 138 Ex. D-5 at 10.) On December 8, 2010, nurse practitioner Debra Stangu examined Kirk at the VCDC and found multiple soft tissue injuries and "right hand metacarpal dislocation not interfering with function." (Doc. 138 Ex. D-7 at 15.) Thus, other healthcare providers did not suggest that Kirk faced a substantial risk of serious harm.

With respect to the missed appointment with the General Orthopedic Hand Clinic on November 1, 2010, there is no evidence that anything more than negligence on the part of

someone at the VCDC caused the absence. Nor has Kirk alleged that it was Flores's duty to ensure that Kirk made it to his appointment. Furthermore, again based on medical records from other providers, there is no evidence from which the inference could be drawn that a substantial risk of serious harm existed and that Flores drew this inference. *Farmer*, 511 U.S. at 837.

Even Kirk himself did not emphasize to healthcare providers at the VCDC that his hand was giving him significant problems. Stangu's evaluation stemmed from a visit arranged after Kirk complained of "a very bad car accident causing 1) a dislocated shoulder, 2) broken ribs, 3) broken right hand, 4) broken or fractured left leg, [and] 5) and serious trauma to [the] skull." (Doc. 138 Ex. D-7 at 11.) On January 25, 2011, Kirk wrote on a VCDC Medical Services Request Form that he was having poor circulation and numbness in his right hand. (Doc. 138 Ex. D-9 at 6.) However, there is no evidence that Kirk ever discussed his hand with Flores when he was seen two days later; the medical records only indicate that Kirk asked for an evaluation of his headaches. (Doc. 138 Ex. D-9 at 8.) Finally, Flores noted on February 10, 2011, that Kirk had right wrist pain, and he prescribed Inderol and naproxen. (Doc. 138 Ex. D-9 at 14.) From the time of Kirk's intake examination on October 27, 2010, to his last visit with Flores on June 23, 2012, Flores alone saw Kirk ten times, and Kirk submitted over two dozen requests for health care, with only the few instances noted referencing the right hand. (*See* Doc. 138 Exs. D-7-D-11.) Viewing the facts in the light most favorable to Kirk, there is no evidence that there was a serious deprivation with respect to his hand or that Flores treated it with deliberate indifference.

With regard to a head injury, it is clear from the record that Kirk demanded a CT scan, but Flores determined that his symptoms did not warrant one and instead prescribed medication. (*See* Doc. 138 Ex. D-9 at 8; Doc. 138 Ex. D-10 at 8.) During a visit with Flores on January 27, 2011, Kirk requested a CT scan because of his headaches and because he believed that he should

not have been discharged from UNMH so soon. (Doc. 138 Ex. D-9 at 8.) Flores wrote that he did not see anything to substantiate the need for a CT scan or MRI at the time, and he tried to assure Kirk of the "benign presentation," yet Kirk became increasingly angry and loud. (*Id.*) Flores prescribed naproxen and methocarbamol. (*Id.*) Kirk again demanded a CT scan and complained of migraine headaches during a visit with Flores on April 22, 2011. (Doc. 138 Ex. D-10 at 15.) Flores found no neurological deficits and prescribed Inderol for the migraine headaches. (*Id.*)

"A mere difference of opinion between a prisoner and the prison's medical staff with respect to a diagnosis or a plan of treatment, or a mere medical difference of opinion, is not actionable under the Eighth Amendment." *Phillips v. Tiona*, 508 F. App'x 737, 746 (10th Cir. 2013) (unpublished) (citing *Estelle*, 429 U.S. at 107). The Tenth Circuit has found in a similar case that

> [the healthcare provider] cleansed [the inmate's] wound, bandaged it, twice provided him pain relievers, and encouraged him to rest. [The inmate] disagrees that this amount of treatment was proper, but such a claim is not sufficient to suggest a constitutional violation, much less deliberate indifference. At best, his allegations point to negligence, which is insufficient to support an Eighth Amendment claim.

*Sanaah v. Howell*, 384 F. App'x 737, 741 (10th Cir. 2010) (unpublished).

Upon a thorough examination of the evidence, viewed in the light most favorable to Kirk, there is no evidence of a serious deprivation or facts supporting a conclusion that Kirk faced a substantial risk of serious harm. Rather, Kirk appears to disagree with Flores's medical opinion as to the appropriate course of treatment. Flores's conduct could, at most, constitute medical malpractice—negligence—not a violation of Kirk's Fourteenth Amendment due process rights. I therefore recommend that the Court find that there has been no showing that Flores violated a constitutional right and that Flores is entitled to qualified immunity and summary judgment in

his favor. Accordingly, I recommend that the Court deny leave to amend as to Kirk's claims against Flores and dismiss Kirk's claims against Flores with prejudice.

**III.     John Does 1-3**

Kirk attempts to plead a new cause of action pursuant to 42 U.S.C. § 1983 against John Does 1-3 for a violation of his Fourth Amendment constitutional right against unreasonable search and seizure. (Doc. 200 Ex. 1 at 7.) Kirk proposes to allege that John Does 1-3 wrongfully conducted a warrantless search of his anal cavity at UNMH on October 26, 2010, following the rollover crash. Upon review of the relevant law, I recommend that the Court deny leave to amend due to futility based on the claim being outside the statute of limitations.

Section 1983 does not contain a statute of limitations. Pursuant to *Wilson v. Garcia*, the statute of limitations for all § 1983 claims brought within a particular state is determined by the statute of limitations for personal injury claims in that state, as long as it is not inconsistent with federal law or policy. 471 U.S. 261, 266-67, 275-76 (1985). In New Mexico, the statute of limitations for personal injury actions is three years. N.M. STAT. ANN. § 37-1-8.

"A civil rights action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Smith v. City of Enid*, 149 F.3d 1151, 1154 (10th Cir. 1998) (quotation omitted). Kirk's injury, if any, accrued on October 26, 2010. (Doc. 109 at 54; Doc. 110 Ex. 1 at 17; Doc. 111 Ex. 2 at 21; Doc. 121 Ex. 3 at 8-9; Doc. 138 Ex. 4 at 14-15.) Kirk filed his original complaint on November 8, 2012. (Doc. 1.) However, the first time Kirk ever mentioned an anal cavity search was not until December 16, 2013, over three years after his hospitalization. (Doc. 101 at 2.) Kirk's counsel filed for leave to amend on January 13, 2015, over four years after the events in question. (Doc. 200.)

Pursuant to Federal Rule of Civil Procedure 15(c)(1),

> An amendment to a pleading relates back to the date of the original pleading when: (A) the law that provides the applicable statute of limitations allows relation back; (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and the complaint, the party to be brought in by amendment: (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

None of the three relation-back provisions apply to this case. First, the New Mexico statute of limitations for personal injury actions does not provide for relation back. *See* N.M. STAT. ANN. § 37-1-8. Second, there is no mention of an anal cavity search of any kind in the original pleading. Third, subsection (C) does not apply because subsection (B) is not satisfied.

Because Kirk's injury, if any, accrued more than three years before he requested leave to amend his complaint, and no relation-back provision applies, I recommend that the Court deny as futile leave to add a cause of action against John Does 1-3 for a violation of Kirk's Fourth Amendment rights.

## CONCLUSION

I recommend that the Court deny leave to amend with respect to Kirk's claims against Flores, find that Flores is entitled to qualified immunity, and dismiss Kirk's claims against Flores with prejudice. I further recommend that the Court deny leave to amend as to Kirk's proposed new cause of action against John Does 1-3 because the claim is outside the statute of limitations. Finally, with respect to Kirk's claims against Burke, I recommend that the Court deny leave to amend to include any allegations that Burke transported Kirk to UNMH in his police unit, but grant leave to amend to assert claims against Burke dealing with Kirk's physical location and treatment from 1:00 p.m. to 1:24 p.m. on October 26, 2010. Accordingly, I recommend that the

Court instruct Kirk's counsel to file a revised proposed amended complaint in compliance with these findings by a date set by the Court.

> **THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**

_____
William P. Lynch
United States Magistrate Judge