IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JAMES THOR KIRK,

        Plaintiff,

v.                                                                                No. CIV 12-1157 JAP/WPL

OFFICER JEFFREY BURKE,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

On January 23, 2017, Officer Jeffrey Burke (Defendant or Defendant Burke) filed DEFENDANT BURKE'S MOTION FOR SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM BRIEF (Motion) (Doc. No. 289), asking the Court to dismiss with prejudice all of Plaintiff James Thor Kirk's (Plaintiff's) remaining claims against Defendant. Plaintiff proceeds *pro se*.[1] On February 3, 2017, Plaintiff submitted a one-page filing entitled "Debates Issues" (Doc. No. 292), in which Plaintiff states summarily that a jury can rule in his favor. His filing includes notations of "deprivation of civil rights …," "dereliction of duty," and "negligence." Plaintiff also contends that an "ambulance affidavit is not admissible and that "[i]f love[']s a crime[,] then I commit it." Plaintiff attached pages of his own deposition testimony to this filing, but the highlighted pages are identical to those attached to Defendant's Motion. On February 9, 2017, Plaintiff submitted another one-page filing that he identified as "Re-Evaluate

---

[1] In late 2014, the Court appointed counsel for Plaintiff but by late 2015, Plaintiff and his attorney had reached an impasse, and Plaintiff indicated he wished to proceed pro se. Doc. Nos. 224, 225.

1

Issues of Debate[,]" "Set for Trial[,]" "Order Transport Order for Trial."[2] (Doc. No. 293). Attached to this filing is a copy of Defendant's Motion with numerous handwritten notations by Plaintiff. The Court construes these two filings (Doc. Nos. 292 and 293) as Plaintiff's Response to the Motion for Summary Judgment (Response).

On February 13, 2017, Defendant filed DEFENDANT BURKE'S REPLY TO PLAINTIFF'S RESPONSE TO BURKE'S MOTION FOR SUMMARY JUDGMENT (Reply) (Doc. No. 294). Defendant argues that Plaintiff's Response (Doc. No. 293) "is merely a rehashing of unsubstantiated comments previously made in previous pleadings filed by plaintiff[,]" and that Plaintiff has failed to defeat Defendant's request for summary judgment.

Plaintiff submitted three additional documents that were entered on February 17 and 21, 2017: 1) "Letter to the Judge Honorable James Parker and William Lynch," which is docketed as a Motion to Amend the Complaint (Doc. No. 296); 2) subpoenas of witnesses (Doc. No. 298); and 3) a letter requesting an investigation of an unrelated matter involving Plaintiff's mother (Doc. No. 297). The Court will deny the request to amend the Complaint and disregard the other filings. *See* discussion *infra*.

**Background and Procedural History**

In 2010, Plaintiff overturned and crashed his automobile while fleeing from police at 90 to 95 m.p.h. in Los Lunas, New Mexico. The chase lasted about 25 minutes, during which Plaintiff frequently weaved back and forth from his lane into the lane of oncoming traffic. The chase is captured by Defendant Burke's dashcam (Doc. No. 112, Ex. B). At one point during the chase, Plaintiff swerved his vehicle onto the highway shoulder apparently attempting to strike a police officer who was standing outside his patrol car.

---

[2] Trial is scheduled to begin April 3, 2017 (Doc. No. 281). However, based on the Court's ruling, the Court will vacate the trial setting. Accordingly, there is no need to transport Plaintiff to the Court for a trial.

Immediately after the crash, police officers attended to Plaintiff and a passenger in the car until the ambulance and paramedics arrived about 24 minutes after the accident. Plaintiff was taken to a hospital, treated for hand and knee injuries, and released the following day to the Valencia County Detention Center.

Plaintiff complained of treatment he received by police officers at the scene of the accident and by medical care providers at the hospital. In November 2012, he filed this 42 U.S.C. § 1983 action against a number of individuals and entities involved in his apprehension and medical treatment. Plaintiff has filed numerous amended Complaints. *See* Defendant Burke's Motions to Strike Complaints (Doc. Nos. 236 and 252) (listing lengthy procedural history regarding Plaintiff's amended Complaints, attempts to amend the Complaint, and the Court's corresponding rulings).

The Court *sua sponte* dismissed several of Plaintiff's claims and several of the named Defendants under 28 U.S.C. § 1915(e)(2) and under Fed. R. Civ. P. 12(b)(6) and entered summary judgment on qualified immunity grounds on another claim.[3] Plaintiff appealed (Doc. Nos. 229, 244), and on September 8, 2016, the Tenth Circuit Court of Appeals affirmed this Court's earlier rulings. (Doc. No. 279–1).[4] During the pendency of the appeal, Plaintiff's remaining claims against Defendant Burke proceeded. *See* Rule 54(b) Certification (Doc. No. 237) (concluding that the claims on appeal were distinct from those against Defendant Burke).

---

[3] At every step of the way, the Court has engaged in a careful and thorough, if not an exhaustive, examination of Plaintiff's claims. For example, on April 28, 2014, Judge William Lynch, the assigned United States Magistrate Judge, proposed that the Court enter summary judgment in favor of Defendant Burke on the ground of qualified immunity and dismiss Plaintiff's claims with prejudice. Proposed Findings and Recommended Disposition (PFRD) (Doc. No. 162). However, before the Court acted on the recommendation of dismissal, Judge Lynch withdrew the PFRD to allow further examination of the facts and to explore the possibility of appointing counsel for Plaintiff. Order (Doc. No. 176).

[4] On February 3, 2016, the Tenth Circuit Court of Appeals dismissed for lack of jurisdiction Plaintiff's additional appeal, filed January 8, 2016. (Doc. Nos. 242, 257).

In a MEMORANDUM OPINION AND ORDER, entered August 7, 2015, the Court described and narrowed the remaining claims against Defendant Burke. (Doc. No. 216). With respect to claims that Defendant Burke was negligent in the manner he allegedly transported Plaintiff to the hospital, the Court concluded that the record "conclusively shows that Plaintiff was transported by ambulance" and not by Defendant Burke. Because paramedics were caring for Plaintiff during the transport to the hospital, the Court found there were no potential claims against Defendant Burke for failure to provide adequate medical aid. Doc. No. 216 at 7.

However, Plaintiff was allowed to proceed with claims against Defendant Burke regarding Burke's treatment of Plaintiff limited to "the time of the rollover [on October 26, 2010] at 1:00 p.m. to the time the ambulance arrived at 1:24 p.m." *Id.* Plaintiff was permitted to file an amended Complaint specific to claims against Defendant Burke during this narrow window of time. Notwithstanding Plaintiff's continued attempt to amend the Complaint to add new defendants and new allegations (*see* Doc. Nos. 226, 270, 278), the sole remaining claims are against Defendant Burke and concern Defendant Burke's treatment of Plaintiff during a 24-minute period.

Defendant argues that there are no genuine disputes of material fact regarding his treatment of Plaintiff and/or that he is entitled to qualified immunity. Thus, Defendant Burke asks that Plaintiff's claims against him be dismissed with prejudice.

## Summary Judgment Standard

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.

*Applied Genetics Intl, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). The party seeking summary judgment bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (internal quotation marks omitted). Once the movant meets this burden, Rule 56 requires the non-moving party to designate specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). In considering a motion for summary judgment, then, the Court's "role is simply to determine whether the evidence proffered by plaintiff would be sufficient, if believed by the ultimate factfinder, to sustain her claim." *Foster v. Alliedsignal, Inc.*, 293 F.3d 1187, 1195 (10th Cir. 2002).

**Undisputed Material Facts (MFs)**

As a preliminary matter, the Court focuses its examination on the 24 minutes after Plaintiff was ejected from his rolled vehicle. Events that preceded or followed that 24-minute window are irrelevant to deciding this Motion. Thus, there is no need to address Plaintiff's handwritten notations on Defendant's Motion about an "ambulance affidavit," "S.O.P.'s not followed" during the pursuit of Plaintiff's vehicle before the crash, a hospital nurse allegedly sodomizing Plaintiff, the hospital's medical treatment of Plaintiff, and other similar notations. *See, e.g.,* Doc. No. 293 at 3, 5.

In addition, the Court does not consider Plaintiff's handwritten notations that consist of unsupported facts or arguments. In order to create a genuine dispute of material fact for purposes of defeating summary judgment, Plaintiff must cite to "particular parts of materials in the record, including depositions, documents, … [or] affidavits or declarations …." Fed. R. Civ. P. 56(c)(1)A). Here, Plaintiff has not identified or cited any material in the record to resist summary

5

judgment. Plaintiff attached deposition transcript pages to one of his filings (Doc. No. 292), but he does not specifically refer to those deposition pages and does not explain how any of that attached testimony creates a genuine dispute of material fact. Moreover, the attachments are the same as those relied on by Defendant Burke in his Motion. Accordingly, the Court does not consider Plaintiff's self-serving and unsupported allegations about purported statements by eyewitnesses and the possible content of ER medical intake records. *See, e.g.,* Response at 3, 5 (Doc. No. 293).

The following facts are undisputed and supported by evidence in the record.[5] Defendant Burke was the first officer on the scene of the accident. Immediately upon seeing Plaintiff's car go off the road and crash, Defendant Burke is heard telling dispatch of the car crash and requesting an ambulance by use of a police code.[6] The pursuit of Plaintiff's vehicle ended at about 1 p.m. and the ambulance was dispatched at 1:02 p.m.

Defendant observed Plaintiff, who had been ejected from the vehicle, lying motionless and initially unresponsive near the vehicle. Defendant Burke attended to the passenger in Plaintiff's vehicle and advised other officers who had arrived on the scene to check on Plaintiff. Defendant Burke told the officers that an ambulance was "rolling." Soon after the accident, Plaintiff became responsive and was "alternately swinging his arms around wildly and trying to get up from the prone position." Burke Aff. ¶ 6 (Doc. No. 114). While still lying down, Plaintiff

---

[5] Although Defendant attached testimony by Plaintiff in support of the Motion, Defendant also cites evidence submitted with his *Martinez* report. Doc. Nos. 110–114. The Court has carefully reviewed the exhibits attached to the *Martinez* report.

[6] Some of these undisputed facts are taken from police records, Defendant Burke's affidavit, a paramedic's affidavit, and medical records. The Court also viewed the dashcam recording showing the 25-minute chase of Plaintiff's vehicle and a five to six minute period when police officers were attending to the occupants of the vehicle. When Defendant Burke stopped his vehicle on the side of the road, Plaintiff's overturned SUV was directly in front of his patrol car's dashcam. This obstructed any view of Plaintiff, who was thrown out on the other side of his vehicle, or of the passenger in Plaintiff's vehicle. Only the upper bodies of the police officers can be seen in the recording. The audio portion of the videotape cuts in and out, but Defendant Burke is heard on the dashcam recording repeatedly telling Plaintiff to "stop resisting" and to "relax." Plaintiff is heard groaning and grunting loudly. The videotape contains no footage of police officers moving Plaintiff or taking him to Defendant Burke's patrol car. The tape ends before the ambulance arrived. (Doc. No. 112, Ex. B).

became aggressive and refused to obey verbal commands from the officers who were instructing him to "stop resisting." *Id.* The officers, including Defendant Burke, used "unarmed distraction techniques"[7] to eventually handcuff Plaintiff behind his back. This cannot be seen on the recording. Defendant Burke assisted in employing the distraction technique while Officer Paul Lopez handcuffed Plaintiff.

Due to Plaintiff's aggressive behavior, the officers "were prevented from administering any first aid or an interactive assessment." *Id.* ¶ 9. Plaintiff did not advise the officers on the scene of any injury, nor did he attempt to have any conversation with them. He was "simply fighting to stand up and get free." *Id.* Officers, other than Defendant Burke, continued to observe Plaintiff until the ambulance personnel arrived to attend to him. Officer Lopez's incident report states that "I stayed with Mr. Kirk until medical personnel arrived on scene and began treating him." (Doc. No. 110, Ex. A at 9). Defendant produced evidence showing that Plaintiff was not moved from the ground and was not touched by police officers other than when they handcuffed him.

The ambulance and paramedic Kevin Druce arrived at 1:24 p.m. The paramedic could not begin treating Plaintiff until 1:28 p.m. while a helicopter landed and transported the passenger from Plaintiff's car to a hospital. When the paramedic first approached Plaintiff, he was handcuffed and "lying on his left side approx. 30 ft to the south of the vehicle." Ambulance Report at 2 (Doc. No. 113–1). The paramedic had the officers remove Plaintiff's handcuffs so they could treat him at the scene. Thus, Plaintiff was handcuffed at the scene for no more than 20 minutes. Paramedic Druce did not see Plaintiff in the back of a patrol car or hear anyone say that

---

[7] Defendant Burke stated that in order to obtain Plaintiff's compliance and to ensure the safety of all involved, the officers knelt by Plaintiff, one near his head and one near his torso. The officers then physically moved Plaintiff's arms "back and forth in random, fast, jerky motions to confuse the muscles and create a situation where constant force cannot be used by Plaintiff to resist…" Burke Aff. ¶ 7 (Doc. No. 114).

Plaintiff had been in a patrol car following the accident. The paramedics rendered emergency aid to Plaintiff, stabilized his neck, and transported him via ambulance to UNM Hospital (UNMH), leaving the scene at 1:45 p.m. A police officer in a patrol vehicle followed the ambulance to the hospital.

Plaintiff complained to ambulance personnel of pain in his neck, back, and chest but stated that he did not remember the incident that caused the injuries. (Doc. No. 113–1). Other records indicate that Plaintiff was "disoriented at the scene." (Doc. No. 142 at 40). The UNMH Emergency Room Physician noted that Plaintiff "denies that he knows how he ended up here…." (Doc. No. 144 at 11).

Medical records indicate that Plaintiff was uncooperative at the hospital. X-rays were unremarkable as to Plaintiff's knee but revealed a right finger fracture. He suffered multiple lacerations and abrasions to his face. X-ray films of the pelvis and chest were negative. A CT scan of the head and brain showed some soft tissue swelling and lacerations. The CT scans of the cervical spine did not reveal any acute abnormalities. The medical care provider wrote that "the patient seems to have escaped major injury with only pulmonary contusions seen on preliminary radiographic reads." (Doc. No. 142 at 41).

Plaintiff was released by UNMH the next morning and was transported from UNM to Valencia County Detention Center. He was charged with multiple crimes.

## Discussion

It is challenging to identify the claim or claims Plaintiff may be pursuing against Defendant Burke. His Response does not address a specific claim or discuss the elements of any claim he is bringing against Defendant Burke. Plaintiff wrote on Defendant's Motion -- "deprivation of civil rights." Response at 7 (Doc. No. 293). Plaintiff also noted that "officers

knew or should have known not to move or touch someone that was ejected from an automobile crash at 90 mph…" *Id.* In his deposition, Plaintiff represented that Defendant Burke "should have just let me lay there until the ambulance go there. Shouldn't have touched me …" Motion, Kirk Dep. at 56 (Ex. A). Defendant Burke also has difficulty characterizing the claims Plaintiff is asserting against him. *See* Motion at 9–10 (noting that the claims are not clear).

In the November 30, 2015 Amended Complaint, parts of which are still active,[8] Plaintiff claims that Defendant Burke failed to render or seek appropriate medical care for Plaintiff at the accident scene and that Defendant Burke's actions or inaction violated Plaintiff's Fourteenth Amendment due process right to receive appropriate medical treatment and his Fourth Amendment rights.[9] Doc. No. 226 at 3, 4. Plaintiff contends that Defendant Burke failed to give him emergency first aid and that Plaintiff should not have been handcuffed. *Id.* Plaintiff also alleges that Defendant was deliberately indifferent to his serious medical needs.[10] *Id.* at 4.

As best as the Court can determine, Plaintiff alleges a Fourteenth Amendment due process claim against Defendant Burke for failure to provide adequate medical attention to Plaintiff at the scene of the accident. *See* PFRD at 6 (Doc. No. 211) (characterizing Plaintiff's proposed claim against Defendant Burke as a "Fourteenth Amendment due process claim for failure to provide adequate medical care, where [Defendant] Burke allegedly exhibited deliberate indifference to [Plaintiff's] immediate medical needs by failing to administer first aid following

---

[8] Defendant subsequently moved to strike the November 30 Amended Complaint, and the Court granted the motion in part and denied it in part. Doc. Nos. 236, 278. However, the November 30 Amended Complaint (Doc. No. 226), as modified, is the controlling Complaint.

[9] This Court already determined that Plaintiff could not pursue a Fourth Amendment claim against Defendant Burke because "a police officer who promptly summons the necessary medical assistance has acted reasonably for purposes of the Fourth Amendment." MEMORANDUM OPINION AND ORDER AT 6–7 (Doc. No. 216) (citation omitted).

[10] If Plaintiff seeks to bring an Eighth Amendment deliberate indifference claim against Defendant Burke, this claim would fail because Eighth Amendment protections do "not apply until after an adjudication of guilt." *Garcia v. Salt Lake County*, 768 F.2d 303, 307 (10th Cir. 1985).

the rollover, handcuffing him, and placing him in the back of his patrol unit for forty-five minutes before transporting him in the unit to UNMH.").

## Fourteenth Amendment Due Process Claim

A. *Legal Standard*

"The Fourteenth Amendment Due Process Clause entitles pretrial detainees to the same standard of medical care owed to convicted inmates under the Eighth Amendment." *Rife v. Okla. Dep't of Public Safety,* 846 F.3d 1119, 1128 (10th Cir. 2017) (citation omitted). *See Estrada v. Cook*, 166 F. Supp. 3d 1230, 1244 (D.N.M. 2015) (arrestees' or pretrial detainees' claims of delayed medical treatment are analyzed under the Fourteenth Amendment Due Process Clause). State officials violate the Fourteenth Amendment if they are deliberately indifferent to a pretrial detainee's serious medical needs. *Rife*, at 1128. The United States Supreme Court has set out a two prong test to show deliberate indifference, requiring a plaintiff to satisfy an objective and a subjective component. *Id.* (citation omitted). The objective test concerns the severity of a plaintiff's need for medical care. *Id.* The subjective test involves a defendant's state of mind and is only satisfied if the defendant knew of an excessive risk to the plaintiff's health or safety and disregarded that risk. *Id.*

A delay in medical attention will only constitute a constitutional harm when the delay results in a substantial harm. *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005). Substantial harm has been described to mean a "lifelong handicap, permanent loss, or considerable pain." *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001).

For purposes of satisfying the subjective component of the test, the Tenth Circuit Court has emphasized that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

10

Deliberate indifference requires more than mere negligence." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). *See also Sealock v. Colorado*, 218 F.3d 1205, 1209–11 (10th Cir. 2000). Deliberate indifference is characterized by "obduracy and wantonness." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

B.   *Analysis*

Plaintiff appears to contend that Defendant Burke exhibited deliberate indifference to his medical needs when Defendant Burke allegedly: 1) failed to give him immediate first aid assistance before the ambulance arrived; 2) placed Plaintiff onto the backseat floor of Defendant's patrol car; and/or 3) handcuffed Plaintiff.

The Court is aware that Plaintiff, as a *pro se* litigant, is entitled to a liberal construction of his filings. However, the Court does not act as Plaintiff's advocate, "will not sift through the record to find support for his argument[s]," and does not "fashion his arguments" out of the conclusory allegations he may assert "without supporting factual averments." *Kirby v. O'Dens*, No. 15-5107, 2016 WL 7448065, at *2 (10th Cir. Dec. 28, 2016) (citations omitted).

In addition, the Court is careful to adhere to the axiom that, at the summary judgment stage, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. However, the summary judgment stage is beyond the pleading phase of litigation, and a plaintiff's version of the facts must find support in the record. *Thomson v. Salt Lake City*, 584 F.3d 1304, 1312 (10th Cir. 2009). Put differently, the Court should not adopt a plaintiff's version of events that is "blatantly contradicted" by unchallenged evidence. *Scott v. Harris*, 550 U.S. 372, 380 (2007). *See also Coble v. City of White House*, 634 F.3d 865, 868–69 (6th Cir. 2011) (there is no need to credit a "visible fiction"). Furthermore, conclusory statements that are devoid of fact will not create a genuine

11

dispute of material fact sufficient to defeat summary judgment. *Perez v. El Tequila, LLC*, No. 16-5002, 2017 WL 495541, at *3 (10th Cir. Feb. 7, 2017).

    1) <u>First Aid</u>

Upon seeing Plaintiff overturn his vehicle, Defendant Burke radioed police dispatch to request an ambulance. When Defendant Burke stepped out of his patrol car, he observed that Plaintiff was lying face down near the vehicle and appeared non-responsive. Defendant Burke immediately attended to the passenger in the vehicle, who was "screaming and laying prone with her upper body halfway out of the passenger side front door." Doc. No. 110–1 at 17. Defendant Burke extracted the passenger from the vehicle while keeping an eye on Plaintiff until other officers arrived. Within seconds, Officer Lopez arrived on the scene, at which point Plaintiff became responsive and was "instantly combative." Burke Aff. ¶ 6 (Doc. No. 114). Defendant Burke explained Plaintiff's aggressive behavior prevented the officers from administering first aid or any interactive injury assessment. Plaintiff offers no evidence to contradict these facts.

The Court observes that the severity of Plaintiff's need for medical care is unclear, particularly in view of his initial unconsciousness. Second, there was very little delay in providing medical assistance to Plaintiff. Defendant Burke had promptly called for an ambulance and knew that one was "rolling." Plaintiff has not presented evidence of a "lifelong handicap, permanent loss, or considerable pain," that was the result of either Defendant Burke's failure to give unspecified first aid treatment or the short delay Plaintiff encountered in awaiting the arrival of an ambulance.

In addition, Defendant Burke's immediate attention to the screaming passenger trapped in the overturned vehicle does not amount to a disregard of Plaintiff's medical condition. "[T]he first duty of a police officer is to ensure the safety of the officers and the public." *Wilson v.*

*Meeks*, 52 F.3d 1547, 1556 (10th Cir. 1995), *abrogated on other grounds by Saucier v. Katz,* 533 U.S. 194, 201 (2001). *See also Tagstrom v. Enockson*, 857 F.2d 502, 504 (8th Cir. 1988) (finding no delay or denial of medical treatment where police officers immediately called in an accident and waited with the victim until the arrival of the ambulance). It is undisputed that Defendant Burke did not intentionally deny or delay medical treatment for Plaintiff. Nor is there evidence that Defendant Burke's behavior was wanton.

Plaintiff has failed to come forward with any evidence sufficient to raise a genuine dispute of material fact that Defendant Burke violated his Fourteenth Amendment Due Process rights by delaying or denying first aid medical care.

2) <u>Patrol Car</u>

Plaintiff's only evidence that Defendant Burke and/or other officers placed him in a patrol car at the scene of the accident is his own testimony. However, that testimony is, at times, contradictory. Plaintiff states that several officers picked him up by the arms and carried him to a patrol car and placed him in the backseat floor of the patrol car. Plaintiff's Dep. at 28–29, 51 (Doc. No. 292). He later says that one of the two officers placed him in the patrol car but he did not know which officer. *Id.* at 59. In his Response, he contends that both officers "apparently" placed him in the patrol car. Doc. No. 293, MF No. 19 (handwritten notation). Essentially, Plaintiff does not know who might have placed him in a patrol car.

Plaintiff argues that hospital intake records contradict Defendant Burke's version of events but Plaintiff fails to cite any specific record. *See* Doc. No. 293, MF No. 12 (handwritten notation). Moreover, the Court cannot reasonably infer that Plaintiff was placed in a patrol car merely because a police officer may have "wheeled Mr. Kirk into [the] Emergency Room." *See*

Response at 2 (Doc. No. 293). It is undisputed that a police officer followed Plaintiff's ambulance to the hospital.

Plaintiff states that the passenger in his car witnessed "officers handcuff[ing] Mr. Kirk and carry[ing] him to police car …." but Plaintiff supplies no admissible evidence to this effect.

Plaintiff's handwritten notations contain numerous references to and questions about the police officers' "lapel cameras" that he believes were "turned off" or "deleted." Doc. No. 293 at 3 MF No. 1 (handwritten notation). Other notations ask: "where [are] officers [sic] Paul Lopez lapel cam records?" Lapel cams are missing or tampered with why? Hidding [sic] facts." *Id.* at 4, 5 MF Nos. 10, 15 (handwritten notations). In earlier filings, Plaintiff requested that Defendant produce the lapel cam, dash cam, and belt tapes, but Defendant Burke responded that he had produced everything he possessed in relation to Plaintiff's case. Doc. Nos. 264, 266. Plaintiff's speculation about lapel cameras and/or other recordings does not create a genuine dispute of material fact.

All of the evidence of record contradicts Plaintiff's version of events. Defendant Burke states that he never placed Plaintiff in a patrol car at the scene of the accident. Officer Lopez stayed with Plaintiff until the paramedics arrived on the scene. When the paramedics first approached Plaintiff, they found him handcuffed and lying on the ground near his vehicle. Paramedic Druce never saw Plaintiff in a patrol car. Ambulance records reflect Plaintiff being stabilized and lifted onto a gurney to be transported by ambulance, without any reference to Plaintiff having been found in a patrol car.

Plaintiff has failed to come forward with any evidence sufficient to raise a genuine dispute of material fact that Defendant Burke violated his Fourteenth Amendment Due Process rights by placing him onto the backseat floor of a patrol car.

       3) <u>Handcuffing</u>

It is not clear whether Plaintiff is attempting to assert that Defendant Burke acted with deliberate indifference by handcuffing Plaintiff.[11] In fact, Plaintiff admits that he does not know who handcuffed him. "One handcuffed me. I don't know which one did." Plaintiff's Dep. at 59 (Doc. No. 289–1). Moreover, it is undisputed that Officer Lopez, not Defendant Burke, handcuffed Plaintiff.

Plaintiff has failed to come forward with any evidence sufficient to raise a genuine dispute of material fact that Defendant Burke violated his Fourteenth Amendment Due Process rights by handcuffing him. Because there are no genuine disputes of material fact regarding the deliberate indifference claim, the Court will grant summary judgment in favor of Defendant Burke and will dismiss Plaintiff's Complaint with prejudice.

## Qualified Immunity

Defendant Burke also contends he is entitled to qualified immunity. Once a defendant raises the defense of qualified immunity, the plaintiff has the heavy burden of showing both that: 1) the defendant violated on of his constitutional rights; and 2) the infringed right was clearly established at the time such that "every reasonable official would have understood that what he [was] doing violated the law." *Ashcroft v. al-Kidd*, __ U.S. __, 131 S.Ct. 2074, 2080, 2083 (2011).

The Court concludes for reasons similar to those set out above that Plaintiff has failed to satisfy his burden to defeat Defendant Burke's entitlement to the defense of qualified immunity.

---

[11] It also is unclear if Plaintiff may have intended to assert an excessive force claim for the approximately 20 minutes he was handcuffed at the scene of the accident before the ambulance arrived. However, the active Complaint (Doc. No. 226) does not assert a claim of excessive force, and the proposed complaint prepared by counsel does not allege that Defendant Burke used excessive force on Plaintiff. Thus, while Defendant speculates that Plaintiff may have intended to assert an excessive force claim, Motion at 9–10, the Court does not find that Plaintiff has made that claim. Even if he had, it is doubtful under the circumstances that the claim would survive summary judgment.

Plaintiff has not raised a genuine dispute of material fact to show a violation of his constitutional rights. On that ground alone, Defendant Burke is entitled to qualified immunity.

**Plaintiff's Additional Filings**

1) <u>February 17, 2017 Letter</u> (Doc. No. 296)

In his "Letter to the Judge Honorable James Parker and William Lynch," Plaintiff seeks to amend the Complaint to add claims of "illegal cavity search, sodomy, claims against UNMH, NMSP." Plaintiff also asks that he be appointed counsel. In support of the requests, Plaintiff attaches a "Jointer Supplemental Complaint," along with copies of previously proposed Complaints.

Plaintiff's February 21, 2017 Letter provides no new grounds to amend the Complaint. Moreover, Plaintiff's request to amend the Complaint will be denied as moot in view of the Court's ruling on Defendant Burke's Motion for Summary Judgment.

In addition, Plaintiff offers no new reasons to support appointment of counsel. *See* February 3, 2017 Order (Doc. No. 290) (denying Plaintiff's seventh request for appointment of counsel). Plaintiff's request for appointment of counsel will be denied as moot.

2) <u>February 21, 2017 Subpoenas</u> (Doc. No. 298)

Based on the Court's ruling on the Motion for Summary Judgment, there is no need to issue trial subpoenas. Thus, the subpoenas are disregarded.

3) <u>February 21, 2017 Letter Requesting Unrelated Investigation</u> (Doc. No. 297)

This filing is nonsensical and is disregarded.

IT IS THEREFORE ORDERED that:

1) DEFENDANT BURKE'S MOTION FOR SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM BRIEF (Doc. No. 289) is GRANTED with the

result that all of Plaintiff's claims against Defendant Burke and the Amended Complaint (Doc. No. 226) will be dismissed with prejudice; and

2) Plaintiff's requests to amend the Complaint and to be appointed counsel (Doc. Nos. 296, 298) are DENIED as moot.

_____
SENIOR UNITED STATES DISTRICT JUDGE